# ANNIE SGITCOVICH v. LUCY SGITCOVICH.

No. A-3098. Decided June 27, 1951.
Rehearing overruled July 25, 1951.
(241 S. W., 2d Series, 142.)

*Walter S. Hart, Ira V. Hart, Dixie & Ryan* and *Thomas M. Ryan,* all of Houston, for petitioner.

The Court of Civil Appeals properly held that the method of citation permitted by the trial court was violative of the elements of due process; in holding that defendant could have been cited by publication; and that the service of citation in this cause was had in a manner prohibited by Rule 21a T.R.C.P. Green v. Sarmiento, 1 Peter CC (U.S.) 74; Buford v. Kirkpatrick, 13 Ark. 33; Bryant v. Shute's, extr. 147 Ky. 268, 144 S.W. 28.

*Julie Mae Anderson,* of Houston, for respondent.

The Court of Civil Appeals properly held that the method used in the trial court for serving citation upon defendant was violative of the due process clause, and that such service was in violation of Rule 21a T.R.C.P. and that the finding of said court that the record did not disclose that citation was had upon defendant, was final. Flynt v. City of Kingsville, 125 Texas 510, 82 S.W. 2d 934; State Mortg. Corp. v. Traylor, 120 Texas 148, 36 S.W. 2d 440; Castleberry v. Castleberry, 134 Texas 409, 135 S. W. 2d 701.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

In this cause, petitioner, Annie Sgitchovich, filed suit in a district court of Harris County, Texas, against her sister, Lucy Sgitcovich, respondent, for an accounting and recovery of a money judgment against Lucy. The petition alleged that both parties were femes sole and residents of Harris County, Texas, and that the last known address of Lucy was 4212 Capitol Avenue, Houston, Texas. Suit was filed November 14, 1949, and on November 15, 1949, citation for personal service on Lucy was delivered to the sheriff of Harris County, Texas. On November 17, 1949, the sheriff returned this citation unserved with the notation that he was informed at 4212 Capitol Avenue that Lucy never did live at that address and (those at that address) did not know where she lived. On November 23, 1949, an alias citation to Lucy was issued and delivered to the sheriff of Harris County, Texas, for personal service. On December 28, 1949, this citation was returned by the sheriff of Harris County with the notation that he could not locate Lucy "after

making many and various trips to places where information that she could be located." On December 7, 1949, pluries citation was issued to Lucy and on December 10, 1949, was delivered to the sheriff of Galveston County, Texas, for service. This was returned by the sheriff December 29, 1949, not served because the sheriff was "unable to locate the within named defendant (Lucy) in Galveston County, Texas." On December 27, 1949, Annie's attorney filed an unsworn application to serve Lucy under Rule 106, Rules of Civil Procedure, and as grounds for substituted or constructive service alleged that applicant had attempted, in various ways to obtain personal service upon Lucy, "but it has been impossible to obtain the exact address of the said Lucy Sgitcovich whereby citation may be served upon her in person as will be hereinafter set out." She alleges the issuance and return of the various citations above set out and that the officers receiving such citations had made diligent effort to find Lucy, but to no avail. That effort to serve had been made at 4212 Capitol Avenue, Houston, Texas, and at various other places where information was furnished that Lucy might be found, but no personal service had been obtained. Further it was alleged that the address of 4212 Capitol Avenue, together with the telephone number of Mrs. William (Henny) Anderson, who resided at such address, had been given by Lucy to certain specified persons where mail or messages would reach Lucy. Among these persons who had been given such information it was alleged were E. C. Clason of Galveston, a real estate agent who collected rentals on Galveston property belonging to Lucy and which he remitted to Lucy monthly at 4212 Capitol Avenue. It was alleged that one Arthur J. Henck, another real estate agent had called the phone number at such address, and although he was told Lucy did not live at 4212 Capitol Avenue, or was her whereabouts known at such address, Lucy came to Henck's office in Galveston immediately thereafter in response to the phone call. It was further alleged that Lucy had addressed a letter to one Mrs. M. M. La Fleur, a tenant occupying property in Galveston belonging to Lucy, and that Lucy had shown 4212 Capitol Avenue, Houston, Texas, as her return address. It was further alleged that Lucy had an attorney who had an office in Houston, Texas, who was at the time of the filing of the application representing Lucy in another and different suit between Annie and Lucy, and the attorney had been asked by the sheriff of Harris County either to accept service for Lucy, or to furnish Lucy's address to the sheriff, which the attorney had declined to do, claiming that he did not know Lucy's address; but that such attorney had told another party that Lucy came to his office frequently and that

he would advise such party when Lucy came to see him, but the attorney had failed to do so; that a private detective had been employed to locate Lucy but that he had been unable to do so. It was further alleged that Lucy was sending post cards through the United States mails to Annie which contained derogatory remarks about Annie, and that report had been made to U. S. Postal authorities and that such authorities had been unable to contact Lucy to date of application. It was further alleged that Lucy was hiding her identity from those attempting to serve her personally with citation and that Lucy was concealing her identity and whereabouts in order to avoid service of citation in the case, and that it was impractical and impossible to obtain personal service upon Lucy. It was alleged that Lucy's attorney; her friend, Mrs. William (Henny) Anderson, who resides at 4212 Capitol Avenue, Houston; E. C. Clason, real estate agent of Galveston; Miss Lena Stipanovic, an employee of Humble Oil & Refining Company in Houston, a friend of Lucy's; and Mrs. M. M. La Fleur of 2106 Avenue J, Galveston, all knew of the whereabouts of Lucy and could get her notice of such citation. It was asked that Annie be permitted to serve Lucy by leaving citation with a copy of the petition with some one over 16 years of age at 4212 Capitol Avenue, and by leaving a copy with petition attached with all five above named, except Mrs. William (Henny) Anderson, "and thereby notifying and forwarding said citation with copy of said petition attached to Miss Lucy Sgitcovich for her attention." On December 26, 1949, Honorable Phil D. Woodruff, District Judge, upon presentation of the application, entered an order granting same, and directing that Lucy be served by leaving a copy of the citation with petition attached at 4212 Capitol Avenue, and with the four other persons named in the application. On December 28, 1949, a fourth citation was issued to Lucy and delivered to the sheriff of Harris County, who filed his return with the district clerk on January 9, 1950, showing that he had delivered the citation to the Harris County residents as directed by the court's order, and all of the parties were above 16 years of age. On December 28, 1949, a citation to Lucy was likewise issued and delivered to the sheriff of Galveston County on December 29, 1949, and was returned by him on December 30, 1949, showing that he had left a true copy of the citation, together with copy of petition with the two Galveston residents "as per orders of the court under Rule 106, Rules of Civil Procedure."

On January 19, 1950, Miss Lena Stipanovic and Mrs. Henny Anderson filed an affidavit in the cause wherein they swore that

citation had been left with each of them for service upon Lucy, but that neither of them knew her present address, and that they had not been able to notify Lucy of the citation and petition being left with them, and they had no way of notifying her of such service upon them. On January 9, 1950, the attorney, with whom citation and copy of the petition had been left for service upon Lucy, filed his affidavit that he was not Lucy's attorney in this cause, had not been employed by Lucy in this cause, and would not accept employment from her to represent her in this cause; neither was he an agent to accept service, nor upon whom service for Lucy could be had; that Lucy's usual place of business, or her usual abode, was not at his law offices in Houston, nor did he reside at the usual place of business or abode of Lucy. It is to be noted that nowhere, in his affidavit, does he state that he is unable to contact Lucy or deliver to her the citation and copy of the petition, or that he does not know Lucy's address, or residence, or whereabouts, or that he had not delivered or forwarded the citation or copy left with him to Lucy. He does not deny that he is her attorney in the other and different suit.

On March 10, 1950, the district court started a hearing in the cause, and in its judgment, dated March 30, 1950, found that Lucy had been "duly served with process, as required by law, in accordance with orders of this court as provided under Rule 106 of the Texas Rules of Civil Procedure," and Lucy having made default and not appearing, the court heard the evidence and rendered a personal judgment for Annie against Lucy as prayed for by Annie, and also for all costs of court. On June 3, 1950, Lucy, through her attorney in this cause, filed a petition for writ of error to the Court of Civil Appeals and deposited cash for costs. In this petition it is alleged that judgment by default was rendered March 30, 1950, against Lucy and in favor of Annie, and that citation in said cause was not served on Lucy or on anyone authorized by her to receive a citation, and that Lucy did not participate either in person or by attorney in the trial of the cause wherein judgment was rendered. On July 17, 1950, Annie, by her attorney, filed a motion requesting the trial court to make findings of fact as to certain transactions occurring in the court's presence prior to entry of judgment March 30, 1950, and that the findings be included in the transcript sent to the Court of Civil Appeals. Attached to such motion were affidavits of an attorney who represented Annie all through this litigation, and also one Earl Earhart. On July 26, 1950, the court entered an order that the motion and affidavit attached be included in the transcript.

On July 27, 1950, Lucy, through her attorney, filed a motion accompanied by affidavits of Lucy, and Mrs. Henny Anderson, (which affidavits deny statements in Annie's motion and affidavit) and asked that her motion and accompanying affidavits be included in the transcript on appeal. On July 28, 1950, the court ordered that Lucy's motion and affidavit be sent up in the record.

A statement of facts showing the evidence heard by the District Court prior to entering the default judgment also accompanied the record.

The Court of Civil Appeals at Galveston held that service of citation on Lucy was made in a manner expressly prohibited by Rule 21a, Rules of Civil Procedure. Also that citation should have been served on Lucy by publication as provided in Rule 109, Rules of Civil Procedure. It was also held that the method of serving the citation in the trial court was violative of the elements of due process of law and therefore insufficient to confer jurisdiction upon the trial court to render a judgment against the defendant Lucy, and reversed and remanded the cause to the trial court. 236 S.W. 2d 861. In this we think the Court of Civil Appeals was in error.

There is no controversy over the fact that Lucy Sgitcovich was and is a citizen of the State of Texas at all times involved in this controversy.

With regard to right of a state to prescribe constructive process on its citizens Judge Wheeler, in Thouvenin v. Rodriques, 24 Texas 468, loc. cit., 478, said: "* * * It is competent for each state to prescribe the mode of bringing parties before its courts. Although its regulations in this respect can have no extra-territorial operation, they are, nevertheless, binding on its own citizens. For, in respect to its own resident citizens, it is undoubtedly competent for the legislature to prescribe such modes of judicial proceeding as it may deem proper, to direct the manner of serving process; the notice which shall be given to defendants; and to declare the effect of a judgment rendered in pursuance of such notice." To the same effect is Northcraft v. Oliver, 74 Texas 162, 11 S.W. 1121; 33 Tex. Jur., p. 849, "Process and Notices", Sec. 43, and authorities therein cited; 42 Am. Jur., p. 56, "Process", Sec. 67; Becker v. Becker, 218 S.W. 542, (6), no writ history; Milliken v. Myer, 311 U. S. 457, 85 L. Ed. 278.

"The general rule is that the legislature in its discretion may prescribe what notice shall be given to a defendant in a suit, subject to the condition that the notice prescribed must conform to the requirement of due process of law. The requirement of due process of law is met if the notice prescribed affords the party a fair opportunity to appear and defend his interests. 12 C. J., 1930, Mabee v. McDonald, 107 Texas 139, 175 S.W. 676." Mexia Ind. Sch. Dist. v. City of Mexia, 134 Texas 95, 133 S.W. 2d 118, loc. cit. 2nd col., 121, 134 A. L. R. 1277; 42 Am. Jur., p. 47, Sec. 57.

■ While personal service is always necessary if a judgment in personam is to be rendered against a non-resident of a state, who does not voluntarily appear or otherwise consent to some other method of service, it is a well recognized rule of law that the Legislature (or in Texas, the Supreme Court) may make rules authorizing a personal judgment against a resident citizen on the basis of constructive or substituted service. 42 Am. Jur., p. 38, "Process", Sec. 46.

Necessity for personal service, 42 Am. Jur., p. 40, *Idem*, Sec. 49:

"* * * However, a state has more control over the form of service upon its own residents than upon nonresidents, and when a resident defendant cannot be found and served personally with the forum, it is competent for the legislature to authorize the recovery of a personal judgment on the basis of substituted service made by leaving a copy of the process at his residence, by constructive service by publication, or by personal service outside the jurisdiction."

And further, *Idem*, pp. 53-54, Sec. 64 and 65:

"* * * Substituted or constructive service of process, if authorized by statute, may be had where it is impracticable or impossible to get actual personal service. The right to resort to constructive service of process is based on the ground of necessity, and it is limited and restricted to cases where personal service cannot be had on a defendant, either because he is a nonresident or because, being a resident, he has gone out of the state, or cannot be found, or has concealed himself so that process cannot be served on him, and the validity of statutes providing therefor is generally held to depend on the fact that the defendant, after due diligence, cannot be found in the state. If personal service can be effected by the exercise of reasonable diligence, substituted service is not to be resorted

to. As applied to resident defendants whose existence, names, and places of abode are known, service by publication is not sufficient to constitute due process of law. Statutes which assume to authorize service of process by publication on resident defendants when personal service is practicable are unconstitutional and void. * * *"

"Provisions for Notice. The object of all process, whether by personal notice or by publication, is to give the person to be affected by the judgment sought notice thereof and an opportunity to defend. The efficacy of substituted or constructive service of process, when allowable, rests upon the presumption that notice will be given in a manner which is calculated to impart knowledge to the person who is to be notified. Its adequacy, so far as due process of law is concerned, is dependent on whether or not the particular form of service is reasonably calculated to give the defendant actual notice of the proceedings and an opportunity to be heard. In providing for substituted or constructive service on individuals, a statute must incorporate provisions reasonably designed to give the defendant notice of the initiation of litigation against him or a reasonable method of imparting such notice, otherwise it is not consistent with the requirement of due process of law. To dispense with personal service, the substitute that is most likely to reach the defendant is the least that ought to be required if substantial justice is to be done." *Idem,* pp. 54-55, Sec. 65.

Respondent contends that since Rule 21a was promulgated by this court at the same time as Rule 106, the two must be construed so as to be in harmony, and when this is done, citation was served in the present suit in violation of the plain provisions of the rules. A reading of Rule 21a shows that such contention is untenable. Rule 21a provides, in part: "Every notice required by these rules, *other than the citation to be served upon the filing of a cause of action* * * * may be served * * * or it may be given in such other manner as the court in its discretion may direct. * * *" By its plain provisions Rule 21a does not apply to citations to be served upon the filing of a cause of action. It is such a citation that is involved in the case at bar. (Emphasis added.)

Respondent also contends that Rule 109 governs the issuance of the citation in this case, since the petitioner's allegations in her application for substituted service bring the case within the provisions of that rule. There is no allegation that the residence of the respondent was unknown, but on the contrary, it is alleged she resides in Harris County, and has given 4212

Capitol Avenue, Houston, as her address where she can be reached; that she has been reached at this address; and that the application asks that a copy of citation and petition be left at this address with some person over 16 years of age. Such citation was left at that address by the sheriff in accordance with the court's order for substitute service. Respondent was not a transient under the terms of Rule 109. Gordon v. Reeder, 202 S.W. 983, no writ history; Adamson v. Collins, 286 S.W. 598, no writ history. Issuance of citation by publication is not authorized without proper affidavit, although facts exist which could be verified. Durst v. Park, 177 S.W. 2d 301, "It is not the making of the affidavit, but the truth of it, that is, the existence in fact of the assumed condition, which enables the court to acquire jurisdiction over the person of the defendant by publication." Kitchen v. Crawford, 13 Texas 516. We have set out at the beginning of this opinion, rather lengthily, the allegations of the application for substituted service, and will not repeat them here. We do not believe the facts of this case authorized service of citation on the respondent by publication, and therefore Rule 109 does not control this cause.

Rule 106, prior to December 31, 1947, provided for service of citation on a defendant in person. By an order dated August 18, 1947, Rule 106 was amended, effective December 31, 1947, by the addition of the following language: "Where it is impractical to secure personal service, as above directed, the court, upon motion, may authorize service by leaving a copy of the citation, with petition attached, at the usual place of business of the party to be served, or by delivering same to anyone over sixteen years of age at the party's usual place of abode, or *in any other manner which will be reasonably effective to give the defendant notice of the suit.*" (Emphasis added.) It is this last clause which is under attack in the present suit.

Before the trial court rendered judgment in this cause he heard testimony regarding the "reasonably effective (service) to give the defendant notice of the suit." The evidence shows that on December 29, 1949, Mrs. M. La Fleur (one of the parties served with the citation and a copy of plaintiff's petition) mailed the papers to Miss Lucy Sgitcovich at 4212 Capitol Avenue, Houston, Texas. This was the address alleged by petitioner as being the address of Lucy in the application for substitute service. That letter was returned, opened, to Mrs. La Fleur with a notation in ink thereon "Does not live here. Address unknown. Left city." There was testimony from two witnesses that this notation was in the handwriting of the

respondent Lucy Sgitcovich. It was returned under Houston postmark dated January 3, 1950. E. C. Clason, another party who had been served with citation and copy of plaintiff's petition, testified that Lucy came to his office in the latter part of December, and that he discussed the present suit with her. He also testified (with regard to his dealings with Lucy) so as to sustain the allegations of the application for substituted service, Earl Earhart testified that he had been able to contact Lucy, through Mrs. Henny Anderson, at 4212 Capitol and that he had discussed this case with Lucy prior to trial.

From all the above evidence heard by the trial court prior to his rendering judgment in this cause, the manner of service of citation in this suit was "reasonably effective to give the defendant notice of the suit," and the opportunity to appear and defend same. Therefore, it did not violate the "due process" clause of the Federal Constitution. It was an unusual method of service, but we hold it was included within the terms of the last clause of Rule 106. To hold otherwise would be to make meaningless the last clause of Rule 106, quoted above. Therefore, the trial court had jurisdiction to enter the personal judgment against Miss Lucy Sgitcovich.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion delivered June 27, 1951.

Rehearing overruled July 25, 1951.

Note: Certiorari denied by the Supreme Court of the United States, 342 U.S. 903.