# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00446-CV

**Baxter Oil Service, Ltd., Appellant**

**v.**

**Texas Commission on Environmental Quality, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-10-000772, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal arises out of an administrative order issued by appellee Texas Commission on Environmental Quality related to cleanup of the Voda Petroleum State Superfund Site ("Voda Order") under the Solid Waste Disposal Act. *See generally* Tex. Health & Safety Code §§ 361.001-.966 (also "SWDA" or "Act"). Appellant Baxter Oil Service, Ltd. challenges the trial court's order granting the Commission's plea to the jurisdiction seeking to dismiss Baxter's summary-judgment motion. The Commission's plea to the jurisdiction urged that the Voda Order is final and unappealable as to Baxter because Baxter did not timely seek judicial review of the Order, and thus, Baxter's summary-judgment motion is an impermissible collateral attack on the Order. On appeal, Baxter asserts that the Voda Order does not comport with due process because it did not provide adequate notice to Baxter of its appellate remedies, rendering it a void order subject to collateral

attack. We will affirm the trial court's order granting the plea to the jurisdiction because we conclude that the Order does not violate due process.

## BACKGROUND

This Court has previously examined the Voda Order and the standard of review applicable to it in a prior opinion. *See Texas Comm'n on Envtl. Quality v. Exxon Mobil Corp.*, 504 S.W.3d 532, 543-46 (Tex. App.—Austin 2016, no pet.) (holding that SWDA does not preclude Commission from issuing administrative orders under both Section 361.188 and Section 361.272 of Act and that preponderance-of-the-evidence standard of review found in Section 361.322(g) applies to orders issued under those sections).[1] That opinion contains a detailed explanation of the statutory framework and the factual and procedural background of the proceedings related to the Voda Order. *See id.* at 535-38. We will not reiterate them here, except as necessary to explain the different issues raised by Baxter in this appeal.

---

[1] Section 361.322(g) provides that:

The district court shall uphold the administrative order if the commission proves by a preponderance of the evidence that:

(1) there is an actual or threatened release of solid waste or hazardous substances that is an imminent and substantial endangerment to the public health and safety or the environment; and

(2) the person made subject to the administrative order is liable for the elimination of the release or threatened release, in whole or in part.

Tex. Health & Safety Code § 361.322(g). In addition, Section 361.322(h) provides: "If the appropriateness of the selected remedial action is contested in the appeal of the administrative order, the remedial action shall be upheld unless the court determines that the remedy is arbitrary or unreasonable." *Id.* § 361.322(h).

Baxter's business is transporting and brokering fuel for customers who burn fuel for energy recovery, resell fuel, or sell blended fuel products. In the 1980s, Baxter sold petroleum products to the Voda Petroleum Company, but Baxter asserts that those products were intended for resale, not waste disposal. The Commission first investigated the Voda Site in the mid-1990s and referred the site to the federal Environmental Protection Agency, which conducted a removal action in 1996. The EPA sought to recover its removal costs from various potentially responsible parties, including Baxter. Although Baxter denied liability, it settled with the EPA for $10,000 in 2000.

In 1999, the EPA referred the Voda Site to the State of Texas for any further remedial action required under state authority. In November 2000, the Commission's predecessor agency proposed the Voda Site for listing on the state Superfund registry. It notified parties whom the agency believed had shipped materials to the Voda Site, including Baxter, of the proposed listing and of their potential responsibility for investigation and remediation of the Site. The agency also provided them with notice that they could make a good-faith offer to conduct a remedial investigation and feasibility study. Although several parties submitted written comments and objections, complaining that no empirical data supported listing the Voda Site on the state Superfund registry, no good-faith offer to conduct the investigation was received. Consequently, the Commission conducted the remedial investigation and feasibility study and proposed a remedial action at a public meeting providing the opportunity for comment.

In September 2008, the Commission notified Baxter and the other potentially responsible parties of the upcoming public meeting to discuss the proposed remedial action and of the parties' statutory right to respond with a good-faith offer to fund or perform the remedial action. In its notice letter, the Commission explained:

3

> If a Good Faith Offer is not received within the specified time period, *the [Commission] will proceed with an Administrative Order* and may complete the remedial action utilizing state funds pursuant to the Solid Waste Disposal Act. *In such case, the [Commission] will seek to recover all of its costs, including oversight costs,* as set out in Section 361.197 of the Solid Waste Disposal Act.

(Emphases added.) No good-faith offer was received and accepted by the Commission, so no agreed order was issued. At a subsequent public meeting, the Commission considered what it described on the meeting agenda as "a Final Administrative Order (Final Order) pursuant to Texas Health and Safety Code Sections 361.188 and 361.272 for the Voda Petroleum, Inc. State Superfund Site."[2]

Although some potentially responsible parties were allowed to address the Commissioners at that meeting, they were not allowed to present evidence to the Commission and they were informed that "the law governing this case does not provide for an adjudicatory hearing at this time." The Act contemplates that Superfund orders may be issued without holding any adjudicative hearing both in Subchapter F, which outlines the process for issuing an administrative order under Section 361.188, *see* Tex. Health & Safety Code §§ 361.184(e), .187(c), and in Section 361.274, which explicitly states that "[a]n administrative order under Section 361.272 does not require prior notice or an adjudicative hearing before the commission," *id.* § 361.274. The Commission issued the Voda Order, titled "An Administrative Order," on February 12, 2010, under the authority established in Sections 361.188 and 361.272 of the Act. *See id.* §§ 361.188 (titled "Final Administrative Order"), .272 (titled "Administrative Orders Concerning Imminent and

---

[2] Baxter does not dispute that it received the statutorily required notices that were sent to it via certified mail.

Substantial Endangerment"). Following a motion for rehearing, the Voda Order became final by operation of law on April 8, 2010.

The Order names Baxter as one of the approximately 350 potentially responsible parties for the Voda Site. One of the Order's conclusions of law states that the potentially responsible parties are "responsible parties" under the Act. *See id.* §§ 361.188(a)(3), (4), (6), (7) (establishing that Commission may order persons responsible for release or threatened release of hazardous substances to perform remedial action at hazardous-waste facility determined to pose imminent and substantial endangerment to public health and safety or to environment), .272 (providing that Commission may issue administrative order to person responsible for solid waste if it appears there is actual or threatened release of solid waste that presents imminent and substantial endangerment to public health and safety or to environment). The Order also mandates that the responsible parties must reimburse the Commission for past investigative costs and for costs incurred in implementing and overseeing the clean-up work and imposes upon them the obligation to undertake the remedial design, remedial action, and post-construction activity.

Copies of the Order were sent to the named parties, including Baxter, via certified mail return receipt requested on February 19, 2010. The return receipt for Baxter was signed on February 26, 2010. The first petition for judicial review filed by a responsible party seeking to appeal the Order was filed on March 12, 2010. *See id.* § 361.322(a) (establishing that those persons subject to an administrative order "may appeal the order by filing a petition" for judicial review). Other parties subsequently sued and all the cases were consolidated into the case underlying this appeal in the 345th District Court of Travis County. Baxter did not file a petition for judicial review of the Voda Order.

On August 1, 2011, the Commission filed a counterclaim against all the plaintiffs in the pending actions. In the same pleading, the Commission instituted a third-party action against numerous potentially responsible parties who did not appeal the order, including Baxter. The Commission's counterclaim and third-party action sought (1) cost recovery under SWDA Section 361.197 for the costs of its remedial investigation, feasibility study, removal action, remedial design, and remedial action at the Site; (2) to enforce the Voda Order under SWDA Sections 361.321 and 361.322(g); (3) an injunction as an alternative to the Voda Order under SWDA Section 361.273(2) seeking to require the third-party defendants to "provide and implement a cost effective and environmentally sound remedial action plan designed to eliminate the release or threatened release"; and (4) attorneys' fees under Texas Water Code Section 7.108, Texas Government Code Section 402.006(c), and SWDA Section 361.341. The Commission asserted in its pleading that because each of the third-party defendants failed to timely appeal the Voda Order, the Order became final and unappealable as to those third-party defendants.[3] *See* Tex. Health & Safety Code § 361.322(f) ("The administrative order is final as to a nonappealing party on the 46th day after the date of receipt, hand delivery, or publication service of the order by, to, or on the nonappealing party.").

Over two years later, on November 15, 2013, Baxter answered the Commission's third-party petition with a general denial. On March 27, 2015, Baxter filed a traditional summary-

---

[3] The Commission asserted that each of the third-party defendants failed to appeal the Order within 30 days of its issuance as required by Section 361.321(c) or within 45 days of the date of receipt, hand delivery, or publication service as required by Section 361.322(a). *See* Tex. Health & Safety Code §§ 361.321(c), .322(a). Our prior opinion clarified that when the Commission issues an order under both Section 361.188 and Section 361.272, like the Voda Order, the deadline for appeal and standards of review found in Section 361.322 apply. *See Texas Comm'n on Envtl. Quality v. Exxon Mobil Corp.*, 504 S.W.3d 532, 545-46 (Tex. App.—Austin 2016, no pet.). Baxter does not dispute that it failed to timely appeal the Voda Order under Section 361.322(a).

judgment motion arguing that the Commission could not prove that Baxter is liable for clean-up costs at the Voda Site as an "arranger" of disposal of solid wastes because (1) Baxter did not dispose of any solid waste—instead, it sold valuable fuel, which is not a solid waste, to Voda; and (2) Baxter did not arrange for disposal because there was never any intent to dispose of the fuel, and intent is an element of an arranger's liability. The Commission filed a plea to the jurisdiction requesting that the trial court dismiss Baxter's summary-judgment motion, arguing that because Baxter did not timely seek review of the Voda Order, the Order is final and unappealable as to Baxter, meaning that the trial court lacked jurisdiction to hear Baxter's collateral attack on the Order. Baxter responded to the Commission's plea to the jurisdiction, asserting that the Order is void and may be collaterally attacked because it violates due process by failing to inform Baxter of its right to appeal and by not adequately explaining Baxter's potential liability. The trial court granted the Commission's plea to the jurisdiction and dismissed Baxter's summary-judgment motion. This appeal followed.

## ANALYSIS

In three issues on appeal, Baxter asserts that (1) the Voda Order did not comport with the Due Process Clause's requirement of adequate notice and an opportunity to be heard before a person is deprived of a property interest by the state, (2) an administrative order that violates a person's due-process rights is void, and (3) an administrative order that is void because it fails to comport with due process can be collaterally attacked. The Commission responds that (1) Baxter seeks to expand the requirements of due process, which does not require the Commission to provide advice to parties about their right to appeal; (2) even if the Order violated due process, it is merely voidable, not void; and therefore, (3) the trial court lacked jurisdiction to consider Baxter's collateral

7

attack on the Order. We turn first to the issue of whether the Voda Order provided Baxter with due process—the issue that is dispositive of this appeal.

Baxter contends that the due-process requirement of adequate notice and an opportunity to be heard before final deprivation of a property interest requires the Commission to notify responsible parties of their right to appeal a final administrative order when that appeal represents the first opportunity that responsible parties have to challenge their liability as responsible parties. Baxter's complaint in this appeal is not that the procedural process provided for by the Act is unconstitutional; its complaint is that the notice provided by the Voda Order did not adequately inform it of the opportunity to be heard. Baxter contends that the Order did not provide adequate notice because (1) it fails to inform Baxter of its appellate remedies and affirmatively misrepresents the Order's finality and (2) it fails to inform Baxter of the possible scope of its liability, depriving Baxter of key information necessary to determine a proper response.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Due process fundamentally requires "the opportunity to be heard 'at a meaningful time and in a meaningful manner'" before an individual is finally deprived of a property interest. *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971). As for the notice required,

"[t]he general rule is that the legislature in its discretion may prescribe what notice shall be given to a defendant in a suit, subject to the condition that the notice

8

> prescribed must conform to the requirement of due process of law. The requirement of due process of law is met if the notice prescribed affords the party a fair opportunity to appear and defend his interests."

*Sgitcovich v. Sgitcovich*, 241 S.W.2d 142, 146 (Tex. 1951) (citation omitted) (quoting *Mexia Indep. Sch. Dist. v. City of Mexia*, 133 S.W.2d 118, 121 (Tex. 1939)). The Supreme Court has explained that due process requires that the notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

We first consider Baxter's contention that the Voda Order failed to comport with due process because it did not provide notice of the right to appeal the Order and was affirmatively misleading about the Order's finality and the right to appeal. As an initial matter, we note that although the legislature has provided a detailed list of information that is required to be included in a final administrative order issued under Subchapter F of the Act, Section 361.188 does not include a requirement to notify the responsible parties of their right to appeal. *See* Tex. Health & Safety Code § 361.188(a). Nor does Section 361.272 require that an administrative order concerning "imminent and substantial endangerment" inform the "person responsible for solid waste" of his right to appeal. *See id.* § 361.272. Although the legislature has imposed such a requirement in certain situations, the legislature has not imposed any requirement in the Solid Waste Disposal Act to notify parties of their right to judicial review of an administrative order.[4] In addition, Baxter has

---

[4] *See, e.g.*, Tex. Fam. Code § 201.012(a) (requiring that notice be given of right to de novo hearing before district court after hearing before associate judge); Tex. Prop. Code § 209.007(b) (requiring that notice from property owners' association concerning property owner's liability for fees and delinquent amounts must state that owner has right to appeal committee's decision to board by written notice to board); Tex. Tax Code § 41.47(e) (requiring tax appraisal review board's order

9

not pointed us to any authority holding that due process always requires an administrative agency to notify a party of its right to judicial review of an administrative order, nor have we found any authority so holding.

Accordingly, because the legislature has not prescribed any particular form of notice, we must consider whether the Voda Order "affords the party a fair opportunity to appear and defend his interests." *See Sgitcovich*, 241 S.W.2d at 146; *see also Mullane*, 339 U.S. at 314. Baxter complains that the Order "failed to provide any indication that the Order could be appealed or the consequences of not appealing, namely that Baxter could be liable for millions of dollars of response costs and other financial obligations." We disagree. We note that the document is titled "An Administrative *Order*," a title indicating a final decision by the Commission for which the right of appeal is implicit. *See Texas-New Mexico Power Co. v. Texas Indus. Energy Consumers*, 806 S.W.2d 230, 232 (Tex. 1991) ("Administrative orders are generally final and appealable if 'they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process.'" (quoting *Sierra Club v. United States Nuclear Regulatory Comm'n,* 862 F.2d 222, 225 (9th Cir. 1988))). The Commission's ten-year process of investigating, conducting a feasibility study, and determining what remedial action to take culminated in the Order, "'which is definitive, promulgated in a formal manner, and one with which the agency expects compliance.'" *Id.* (quoting 5 J. Stein, G. Mitchell & B. Mezines, *Administrative Law* 48–10 (1988)).

While the Order itself does not expressly detail the responsible parties' right to seek judicial review, it refers in the first paragraph to Section 361.188, which is titled "Final

---

to inform "property owner in clear and concise language of the property owner's right to appeal the board's decision to district court").

Administrative Order" and which states that Subchapter K of the Act (titled "Appeals; Joinder of Parties") applies to orders issued under Section 361.188. *See* Tex. Health & Safety Code § 361.188(b) ("The provisions in Subchapters I, K, and L relating to administrative orders apply to orders issued under this section."). Under the circumstances presented here, where the Order informs Baxter of the statutory authority under which it was issued and where Baxter had been informed over the past ten years of the ongoing Commission investigation and clean-up process—including the possibility that the Commission would seek to recover its costs from the responsible parties—a more detailed notice in the final order of the right to seek judicial review is not required. *See City of W. Covina v. Perkins*, 525 U.S. 234, 241 (1999) (holding that individualized notice of state-law remedies "established by published, generally available state statutes and case law" is not required by due process when those state-law remedies are sufficient to satisfy the demands of due process). "All citizens are presumptively charged with knowledge of the law . . . ." *Atkins v. Parker*, 472 U.S. 115, 130 (1985) (citation omitted). Moreover, "[t]he entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny." *Id.* at 131 (holding that notice provided by state that described effect of federal legislative change to food-stamp program in general terms did not deprive recipients of due process).

Baxter asserts that the Order is affirmatively misleading and creates the impression that no right to appeal exists. It relies on language in a section of the Order discussing the parties' opportunity to conference with the project manager and stating: "The conference is not an evidentiary hearing, does not constitute a proceeding to challenge this [Order], and does not give

11

Agreeing Respondents or, if there are no Agreeing Respondents to this [Order], the Performing Parties the right to seek review of this [Order]."[5] Baxter argues that this section would have been a logical place to provide notice to the responsible parties of their right to seek judicial review, but instead, it appears to deny any right to seek judicial review. In context, however, the "Opportunity to Conference" section states that "[t]he purpose and scope of the conference will be limited to issues involving the implementation of the Remedial Activities," and it only involves parties who have either agreed to the terms and conditions of the Order or who have funded or performed work. It has no relevance to and thus makes no reference to the responsible parties' right to seek judicial review.

Baxter also asserts that the section of the Order titled "Sovereign Immunity" gives the misleading impression that sovereign immunity precludes any opportunity to sue the State to challenge the order, relying on a sentence stating: "The Parties hereby agree that nothing in this [Order] waives the State of Texas' sovereign immunity relating to suit, liability, and the payment of damages." We note, however, that the next sentence states: "The Parties further agree that all claims, *suits*, or obligations *arising under or relating to this [Order] are subject to and limited to the availability of funds appropriated by the Texas Legislature for that respective suit*, claim, or obligation." (Emphases added.) That language indicates the possibility of a suit to challenge the Order. We conclude that the Order does not affirmatively misrepresent the Order's finality or Baxter's right to appeal it.

---

[5] The Order defines "Agreeing Respondents" as "[t]he [potentially responsible parties] listed in Section II (Findings of Fact) Paragraph C that fund or perform the work and have agreed to the terms and conditions of this [Order] as evidenced by signing a consent form" and "Performing Parties" as "[c]ollectively, the Agreeing Respondents and persons that did not enter into this [Order] but that fund or perform the work."

We next consider Baxter's contention that the Order fails to adequately inform Baxter of the issues involved in the proceeding, and in particular, of the potential scope of Baxter's liability. "The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'" *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) (requiring municipal utility to inform customers of availability of procedure for protesting utility bills before termination of utility service when administrative procedures were not described in any publicly available document). Here, the Order apprised Baxter and the other potentially responsible parties of the Commission's final determination that they are responsible parties under Section 361.271 of the Act and that they are ordered to reimburse the Hazardous and Solid Waste Remediation Fee Account for all costs of the remedial investigation, the feasibility study, and the implementation and oversight of the work to clean up the Voda Site. The Order also informed the responsible parties that they are "jointly and severally responsible for carrying out the Work."[6] The Order provided detailed information about the hazardous substances and solid wastes found at the Voda Site. In this situation, in which the Commission is ordering the responsible parties

---

[6] To the extent Baxter's complaint is that the Order did not inform it of the exact dollar amount of its potential liability, the structure of the Act is such that an order issued under Section 361.188 contemplates that the Commission will first "order the responsible parties to remediate the facility and, if appropriate, reimburse the hazardous waste disposal fee fund for remedial investigation/feasibility study and remediation costs," and then no later than one year after the remedial action is complete, the Commission shall file a cost-recovery action under Section 361.197 "against all responsible parties who have not complied with the terms of an administrative order issued under Section 361.188." Tex. Health & Safety Code §§ 361.188(a)(6), .197(a). The Act further provides that the Commission "may seek a judgment against the noncompliant parties for the total amount of the cost of the remedial investigation and feasibility study, the remedial design, and the remedial action, including costs of any necessary studies and oversight costs, minus the amount agreed to be paid or expended by any other responsible parties under an order issued under Section 361.185 or 361.188." *Id.* § 361.197(b).

13

to clean up the Site and declaring that they are jointly and severally responsible for carrying out the work to do so, the Order adequately informed Baxter of the scope of its potential liability.[7]

The Order provided the responsible parties with ample information to allow them to prepare to present their objections to the Order, and as already discussed, the Order's reference to the statutory authority under which it was issued provided them with information about the availability of the opportunity to seek judicial review of the Order. Furthermore, the Commission had conducted the process of registry and investigation of the appropriate remedial action at the Voda Site for ten years before it issued the Voda Order, and throughout that time, it sent the multiple statutorily required notices to the potentially responsible parties, including Baxter. The entire structure of Subchapter F is designed to notify and involve potentially responsible parties in the investigation and clean up of hazardous-waste facilities from the very beginning of the process, which begins with notification to them of the proposed listing of the facility and procedures for requesting a public meeting to discuss the listing, *id.* § 361.184, continues through the interim stages of the remedial investigation/feasibility study, *id.* § 361.185, and the public meeting to discuss the proposed remedial action, *id.* § 361.187, and culminates in the final administrative order, *id.* § 361.188. We conclude that when the Order is considered in the overall context of the Solid

---

[7] Baxter had knowledge of its potential responsibility for clean-up costs relating to the Voda Site dating back to the EPA removal action and its settlement with the EPA for $10,000. We note that the consent order that Baxter signed to settle that action reflects that Baxter and the other respondents owed payments totaling $589,200, while the total owed by the "de minimis respondents," was $62,203. While Baxter's prior involvement provided it with an awareness of the extent of the problems at the Voda Site, even without that knowledge, the sheer scale of the ten-year process required for the Commission to finalize the proposed remedial action and the fact that a hazardous-waste site was the subject of the Order would suffice to apprise even a responsible party without prior involvement of the potential scope of liability.

14

Waste Disposal Act and the process in which the Commission engaged before issuing the Order, its reference to the statutory authority under which it was issued was notice "reasonably calculated, under all the circumstances," to inform the responsible parties, including Baxter, of the availability of "an opportunity to present their objections" to the Order. *Mullane*, 339 U.S. at 314.[8] In addition, the Order adequately informed Baxter of the issues involved in the proceeding and Baxter's potential liability. We overrule Baxter's first issue. Because we conclude that the Order satisfies the requirements of due process, we need not reach Baxter's second and third issues. *See* Tex. R. App. P. 47.1.

## CONCLUSION

Having concluded that the Voda Order provides adequate notice and satisfies the requirements of due process, we affirm the trial court's order granting the Commission's plea to the jurisdiction and dismissing Baxter's summary-judgment motion.

---

[8] In addition to arguing that the notice is insufficient under the *Mullane* standard, Baxter argues that applying the three-part balancing test articulated by the Supreme Court in *Mathews* demonstrates that the Order did not satisfy due process and therefore is void. We note, however, that the Supreme Court has stated that the "more straightforward test of reasonableness under the circumstances" articulated in *Mullane* is the appropriate analytical framework for questions regarding the adequacy of notice. *Dusenbery v. United States*, 534 U.S. 161, 167-68 (2002) (explaining that *Mathews* balancing test analyzes adequacy of administrative procedures, not notice). We apply the *Mullane* standard here.

15

_____

Cindy Olson Bourland, Justice

Before Chief Justice Rose, Justices Pemberton and Bourland

Affirmed

Filed:   July 31, 2017